UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DEBRA M. CRENSHAW, etc.,

      Plaintiff,

v.                                Case No. 3:06-cv-824-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,[1]

      Defendant.
_____

## OPINION AND ORDER[2]

### I.  Status

Debra M. Crenshaw is appealing the Social Security Administration's denial of her claim for Disability Insurance Benefits.  Her alleged inability to work is based on "lower back pain[.]"  Transcript of Administrative Proceedings (Tr.) at 72 (capitalization omitted).  Plaintiff was found not disabled by Administrative Law Judge (ALJ) JoAnn L. Anderson in a Decision entered on May 19, 2006.  *Id.* at 13, 21, 22.  Ms. Crenshaw has

---

     [1]     Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue, Commissioner of Social Security, is substituted as Defendant herein.

     [2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

exhausted the available administrative remedies and the case is properly before the Court.

It is suggested the ALJ failed "to explain why she does not believe the testimony of the only orthopedic surgeon and neurosurgeon who have evaluated the Plaintiff." Memorandum in Support of Complaint (Doc. #11; Memorandum) at 8. Alternatively, Plaintiff asserts "a consultative examination could be performed." *Id.*

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[3] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if . . . supported by 'substantial evidence[.]'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

*Richardson v. Perales*, 402 U.S. 389 (1971)). Despite the existence of support in the record, the ALJ's determination may not be insulated from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

Plaintiff postulates that a "loss of bladder/bowel control" resulting from spinal stenosis is her "most significant limitation from a vocational standpoint." Memorandum at 5. "According to the orthopedic surgeon, [Arnold] Graham Smith, spinal stenosis, which is documented by MRI studies, can cause cauda equin[a] syndrome[,]" *id.* at 6, a condition "not even mention[ed] or discuss[ed]" by the ALJ. *Id.* at 7.

In regard to Dr. Smith's "statements about her ability to work[,]" Plaintiff observes these were "dismissed . . . as conclusory." *Id.* Although conceding "the ultimate issue as to whether or not [she] is disabled is a decision reserved to the Commissioner," Ms. Crenshaw contends "Dr. Graham Smith's statement concerning his diagnostic opinion at the time of his evaluation and the urgent need for additional recommended tests is his medical opinion, [a matter] reserved to the doctor." *Id.* 7-8.

Several factors govern the analysis of information from nontreating[4] sources. As an initial matter, it is noted examining doctors' opinions are not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam). However, the ALJ is required to consider every medical opinion that is in evidence. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Unless a treating source is given controlling weight, an opinion should be evaluated by examining such factors as: (1) length and frequency of treatment (if any), (2) nature and extent of the relationship, (3) supportability, (4) consistency, and (5) specialization. *See id*. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). Furthermore, the ALJ "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (internal quotation marks omitted); *see also Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

The ALJ acknowledged Plaintiff suffers from degenerative disc disease and spinal stenosis. *See* Tr. at 15. She "consider[ed] urinary incontinence as a possible symptom of [Claimant's] back problems[,]" and described testimony from Dr. Smith suggesting

---

[4] "Nontreating source means a physician, psychologist, or other acceptable medical source who has [performed an] examin[ation] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (emphasis omitted).

"that her bladder incontinence may be caused by pressure on the spinal sac which deprives the bladder nerves of an adequate blood supply[.]"  *Id.* at 16.  The judge considered Ms. Crenshaw's claim "that she goes to [the] bathroom every 20-30 minutes even though she tries to hold it[,]" *id.* at 17, but ultimately the ALJ "did not assess any work-related limitations as a result of urinary incontinence."  *Id.* at 19.  She reasoned in regard to the need for frequent bathroom breaks that

> no treating or examining source has assessed this as a limitation.  Furthermore, the claimant offered no reasonable explanation as to why she could not reduce her intake of fluids during work hours, or rely upon adult incontinence products while waiting for scheduled work breaks.  The claimant told Dr. Smith that she wears pads in her underwear, and she testified at the hearing that she wears protection.

*Id.* (citation to record omitted).  The judge rejected Dr. Smith's opinion as to ability to work, citing the lack of "a function-by-function assessment, or other[ explanation showing] why he had concluded the claimant was incapable of even sedentary work activities."  *Id.*  Speculation "that the claimant's condition had deteriorated since she had been examined by Dr. [Claudio E.] Vincenty" was insufficient as Dr. Smith "did not identify any objective medical findings which document deterioration, and the claimant described the same subjective complaints to both Dr. Vincenty and Dr. Smith[.]"  *Id.*

Claimant testified she had to use the bathroom about every 30 minutes, and said she can generally feel when she has to go and will hold it for a minute. *See id.* at 284. Her testimony suggests that if she tries to avoid using the bathroom for a longer period, she will be at risk of wetting herself. *See id.* However, Ms. Crenshaw said nothing about losing part of her bladder's contents each time she sits up, as is now claimed. *See* Memorandum at 5 ("The Plaintiff testified that she loses a portion of her bladder contents every time she sits up, which would make retaining employment impossible[.]" (citing Tr. at 301-02)); *cf. id.* at 6 (stating loses bladder content each time stands and "*[t]hat* frequency of loss . . . would make continued employment problematic" (citing Tr. at 17) (emphasis added)). Instead, she reported getting up and using the bathroom, *see* Tr. at 289, and admitted the frequency of her need to urinate is related to her level of fluid intake. *See id.* at 284. Moreover, questioning from her representative about whether she "wear[s] protection so [she doesn't] have to worry so much about [her] bladder problem" elicited the response that she normally does. *Id.* at 292. She did not wear protection at the hearing. *See id.* The transcript reflects that she stood up for part of her testimony, *see id.* at

275, and later paid a visit to the bathroom, see id. at 281, all with no mention of accidents.[5]

While perhaps more urgent difficulties had been reported to Dr. Smith, see id. at 201, 239, Claimant's testimony at the hearing undermines the Memorandum's assertions as to incontinence. Plaintiff criticizes the ALJ's "recommendation . . . that [she] wear" a protective undergarment, as such are "designed to protect against the occasional mishap[,]" Memorandum at 6, but Ms. Crenshaw's statements at the hearing support the proposition that a specially designed undergarment combined with limiting fluid intake would adequately address the problem. Whether she could properly be diagnosed with cauda equina syndrome, or whether she needs medical treatment to resolve it, is not determinative. Diagnoses alone do not establish the existence or extent of functional limitations. A "mere diagnosis . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam); see also Scull v. Apfel, 221 F.3d 1352, No. 99-7106, 2000 WL 1028250, at *1 (10th Cir. 2000) (Table) ("[D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition[.]"). Thus, as the Court finds unpersuasive Plaintiff's claim of error in regard to

---

[5] Ms. Crenshaw also said she has a bowel issue. See id. at 303. She did not provide details about that at the hearing, except to say that straining during bowel movements causes discomfort. See id.

functional abilities, there is no need to remand for consideration of Dr. Smith's diagnostic opinion or a consultative examination to determine whether cauda equina syndrome would constitute a correct diagnosis.[6]

### IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of June, 2007.

/s/         Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and pro se parties, if any

---

[6] Claimant observes in passing that, if her testimony about her capacity for sitting and standing or her need to elevate her legs had been fully accepted, she might be considered unable to work. Memorandum at 6. However, Plaintiff's testimony in this regard was not fully credited, see Tr. at 17-19, and she fails to demonstrate the ALJ thereby erred.
    It is also noted the record includes a Physical Residual Functional Capacity Assessment, see id. at 189-96, which sets out an opinion of limitations generally less restrictive than those accepted by the ALJ. See id. at 16. Additionally, the judge's residual functional capacity (RFC) findings as to exertional capacity appear to be more limiting than records from Dr. Vincenty would suggest. See, e.g., id. at 165. Despite the existence of some contrary evidence in the record, there seems to have been a substantial basis for the ALJ's RFC assessment.